WILLIAM S. RHODES, Plaintiff, *v.* LITTLE FALLS DAIRY CO., INC., Defendant.

Supreme Court, Herkimer County, June 12, 1930.

*William S. Rhodes*, pro se.

*Blumberg & Conley* [*Richard B. Conley* of counsel], for the defendant.

SMITH, J. The defendant is a domestic corporation having stockholders, of which the plaintiff is one. The plaintiff operates a dairy farm, and on or about the 20th day of March, 1929, entered into an agreement pursuant to which he agreed to sell to the defendant and the defendant agreed to purchase his milk for the year ending March 31, 1930. The agreement contains the following provision: " The Dairy Company agrees to distribute to the dairyman for milk delivered by him, pursuant hereto, his proportionate share of the earnings of the Company after deducting all expenses of operation (including taxes) all losses and a sufficient sum to provide for a reasonable return to the stockholders of the Company." Under and pursuant to this agreement the plaintiff delivered milk to the com-

pany down to January 1, 1930. As to the milk so sold and delivered and the settlements therefor there is here no dispute.

The controversy arises over the fact that on or about October 20, 1929, the defendant sent a notice to all its patrons, including this plaintiff, which reads as follows: " In order to correct the over-production of milk in the spring and summer months, and to establish a more even flow in the fall and winter months, the following resolution has been adopted by the Board of Directors of the Little Falls Dairy Co., Inc.:

" *Resolved,* That all patrons be paid on their base production, the base to be taken from the lowest month's production.

" The remainder of patron's milk shall be considered surplus and shall be so paid for.

" Base price shall be established by return in January, which price shall be paid for all base milk throughout the year, up and down with class one price on the market."

The plaintiff continued to deliver milk to the defendant until April 1, 1930, upon which day he served upon the defendant a demand that it account to him for his share of the moneys received for milk delivered during January, February and March, 1930. The settlements for these three months were made in accordance with the new plan for paying for milk, as outlined in the communication to the patrons of October 20, 1929. It nowhere appears in the complaint what was the lowest month's or months' production of the plaintiff, which was to be taken as the base, but it does appear that for the first two weeks in January the plaintiff delivered 13,139 pounds of milk, of which 3,255 pounds were treated as base and 9,884 pounds as surplus, and that the price allowed for the base milk was two dollars and ninety-six cents and the price allowed for the surplus milk was two dollars and fifty-three cents. Similar information is given for the second two weeks in January, during which two weeks the plaintiff delivered to the defendant 14,026 pounds, of which 3,472 pounds were base and 10,554 pounds surplus; the price allowed for the base milk was three dollars, and for the surplus milk two dollars and fifty-seven cents. For the first two weeks in February the plaintiff delivered 13,860 pounds, of which 3,255 pounds were base and 10,605 pounds surplus; the price allowed for the base was three dollars and for the surplus two dollars and eighteen cents. For the second two weeks in February the plaintiff delivered 13,171 pounds, of which 2,821 pounds were base and 10,350 pounds surplus; the base milk price was two dollars and ninety-two cents and the surplus price two dollars and ten cents. The milk was sold on the basis of 3.5 butter fat test, and the variations in the price for the base milk were caused by the variation in the butter fat tests.

The complaint contains no allegation in reference to the March delivery.

The purpose of the defendant in serving the notice of October 20, 1929, was commendable, but it had no right by any such process to vary the terms of the contract which it had entered into with the plaintiff. The contract covered the milk to be delivered by the plaintiff up to and including the 31st day of March, 1930, and the modification of the method of computing the price was an arbitrary one and not within the contemplation of the contract. It is obvious to one acquainted with the operation of a dairy that it is impossible within the time given, from the twentieth of October to the first of January, to readjust milk production so as to equalize the flow. The action of the defendant was arbitrary and unwarranted in method, and the plaintiff would appear, in a proper action, to be entitled to recover such damages as he may have sustained by reason of this breach on the part of the defendant of its contract with him. It appears, moreover, upon the face of the complaint itself that the plaintiff has at hand sufficient evidence to allege a cause of action in damages, provided he has the same information as to the month of March, as to milk delivery and prices, that he sets forth as to the months of January and February. On the face of it, it would appear that his damage would be the difference in the price allowed for the surplus milk and that allowed for the base milk. Having alleged that, it would be up to the defendant to show that that was not a fair basis upon which to measure the damages, and also to show what would be the damages, if any, upon the basis of the contract.

The plaintiff, however, does not bring this action at law for damages; he brings it " on behalf of himself and on behalf of all other persons, who are stockholders herein, and have delivered milk to defendant who may come in and contribute to the expense of this action." In his brief submitted he states that the defendant lived up to the agreement on its part until the 1st of January, 1930, and makes no complaint of the conduct of the defendant in fixing the prices up to that time. His whole complaint is based upon the theory of an accounting, when he sets up no basis upon which an action in accounting can be maintained. There was no trust or fiduciary relationship here. He alleges that he has no adequate remedy at law. Ancillary actions for discovery have been abolished. (Civ. Prac. Act, § 345.) There is no allegation in the complaint that the defendant has improperly taken any advantage of the plaintiff, excepting in respect of the adoption of the policy set forth in the notice of October 20, 1929. It necessarily follows that the plaintiff has mistaken his remedy; that he has adequate remedy at law; that he has all the data for the months of January and February, 1930, at

least, and can easily obtain the data for the month of March, if he has it not at hand, in order to formulate a complaint in law for damages for breach of contract.

It might be argued that the motion to dismiss the complaint was not a proper motion and that the motion should be to strike out certain allegations of the complaint; but the answer to this suggestion is that it would be impossible to formulate a complaint at law out of a complaint which so completely sounds in equity.

I think, therefore, the motion to dismiss the complaint should be granted; without prejudice, however, to the commencement of an action at law to recover any damages which the plaintiff may have sustained by reason of the method adopted by the defendant for the determination of prices of milk delivered by the plaintiff to the defendant from the 1st of January, 1930, to the 31st of March, 1930.

Ordered accordingly, with ten dollars costs of motion.